Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (212) 363-7171
Email: aapton@zlk.com

Mark S. Reich (*pro hac vice* forthcoming)
Courtney E. Maccarone (*pro hac vice* forthcoming)
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA ADE and ERIN WEILER**,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Rita Ade and Erin Weiler (hereinafter "Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant Trader Joe's Company ("Trader Joe's" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

### <u>NATURE OF THE ACTION</u>

1.     This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Trader Joe's Dark Chocolate 72% Cacao bars and The Dark Chocolate Lover's 85% Cacao bars products (collectively the "Affected Products"), the marketing and labeling of which are silent as to the presence of elevated lead and cadmium levels.  In truth, the

Affected Products contain unsafe levels of lead and cadmium (collectively "Heavy Metals"), and Trader Joe's advertising and packaging are false, misleading, and reasonably likely to deceive the public.

2.      Defendant does not represent or warn consumers that the Affected Products contain lead and cadmium.

3.      Lead is a harmful chemical when consumed and is especially dangerous to pregnant women and children.  Lead poisoning occurs when lead builds up in the body, over months or years.[1]

4.      Any amount of lead exposure can lead to serious health problems.  Children younger than 6 years are especially vulnerable to even mild lead exposure, which can severely affect mental and physical development.[2]  At very high levels, lead poisoning can be fatal in adults and children.[3]

5.      Cadmium is also dangerous when consumed. Cadmium can be found in cigarette smoke and a wide variety of industrial products, including batteries, pigments, metal coatings, and plastics. Cadmium is carcinogenic and exposure to even low levels of cadmium over time may result in a toxic build-up of cadmium in the kidneys, leading to kidney disease[4] and bones damage and osteoporosis.[5]

6.      Consumer Reports Magazine discovered that a selection of dark chocolate bars sold to the public contained high levels of heavy metals: specifically, cadmium and lead.[6]

7.      Included among the brands selling dark chocolate bars with elevated cadmium and lead was Trader Joe's dark chocolate.[7]   Trader Joe's claims and promotes to customers that

---

[1] *Lead poisoning*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717 (last visited January 12, 2023).
[2] *Id.*
[3] *Id.*
[4] Nikhil Johri, *Heavy Metal Poisoning: The Effects of Cadmium on the Kidney,* BIOMETALS (Oct. 2010) https://pubmed.ncbi.nlm.nih.gov/20354761/ (last visited Jan. 12, 2023).
[5] Agneta Akesson*, Cadmium-Induced Effects on Bone Population-Based Study of Women*, ENVIRON HEALTH PROJECT (June 2006) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1480481/ (last visited Jan. 12, 2023).
[6] Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, CONSUMER REPORTS (Dec. 15, 2022) https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last visited January 12, 2023).
[7] *Id.*

CLASS ACTION COMPLAINT

"Trader Joe's does not sell any product containing chemicals in excess of the levels allowed by the FDA *or any other law*."[8]

8.    In November of 1986, California passed the Safe Drinking Water and Toxic Enforcement Act, which came to be known by its legislative name "Prop 65."  Proposition 65 requires businesses to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm.[9]  As a part of that standard, California's experts set regulatory standards for acceptable levels of exposure to toxic chemicals, referred to as the maximum allowable dose levels ("MADLs") in chemicals which are identified as causing cancer, birth defects, or reproductive harm.[10]

9.    Consumer Reports referenced California's MADLs for lead (0.5 Micrograms) and cadmium (4.1mcg). The testing performed found that Trader Joe's Dark Chocolate 72% Cacao product contained 192% of the MADL of lead and that Trader Joe's The Dark Chocolate Lover's 85% Cacao product contained 127% of the MADL of lead and 229% of the MADL of cadmium.[11]

10.    Defendant knew or should have known that its representations and advertisements regarding the Affected Products were false and misleading and that they failed to disclose material information.  Defendant had been part of a previous Heavy Metal matter in 2016 raised by watchdog group As You Sow, which filed Proposition 65 Notices for elevated lead and cadmium levels found in the products of multiple dark chocolate brands, including Trader Joe's.[12]

11.    The lead and cadmium levels in the Affected Products could not have been known before purchasing them and could not be determined without extensive and expensive scientific

---

[8] *Product FAQs*, TRADERJOES, https://www.traderjoes.com/home/FAQ/product-faqs (emphasis added) (last visited Jan. 12, 2023).

[9] *About Proposition 65*, OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/about-proposition-65 (last visited January 12, 2023).

[10] *The mysterious world of Prop 65, part 8: Acceptable risk levels*, CONSUMER PRODUCTS LAW BLOG (Feb. 19, 2015) https://www.consumerproductslawblog.com/2015/02/the-mysterious-world-of-prop-65-part-8-acceptable-risk-levels/ (last visited January 12, 2023).

[11] *Id.*

[12] See Ellison Folk, *Notice of Violation of California Health and Safety Code § 25249.5 et seq.*, OFFICE OF THE ATTORNEY GENERAL – STATE OF CALIFORNIA DEPARTMENT OF JUSTICE (Oct.24, 2017) https://oag.ca.gov/system/files/prop65/notices/2017-02379.pdf (last visited January 12, 2023).

testing. Accordingly, consumers relied, and continue to rely, on Defendant to be truthful regarding the ingredients, including the presence of the Heavy Metals, in the Affected Products.

12. Defendant, on the other hand, is positioned to test its products and has exclusive knowledge of the quality control testing on the Affected Products and the ingredients contained therein.

13. If Plaintiffs knew that the Affected Products contained the Heavy Metals, they would not have purchased the Affected Products on the same terms, if at all.

14. Plaintiffs and those similarly situated ("Class Members") relied on Defendant's misrepresentations and omissions that the Affected Products contained only those ingredients listed on the Affected Products packaging and labeling.

15. Plaintiffs and Class Members paid a premium for the Affected Products based upon Defendant's marketing and advertising campaign. Given that Plaintiffs and Class Members paid a premium for the Affected Products based on Defendant's misrepresentations and omissions, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

16. Defendant's conduct violated and continues to violate, inter alia, Maryland Commercial Law §§ 13-101 *et seq* and California's Consumer Protection laws.[13] Defendant also breached and continues to breach its warranties regarding the Affected Products and has been and continues to be unjustly enriched. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Affected Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds

---

[13] See California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; and California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1761 et seq.

$5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

18.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this district and conducts a substantial part of its business regularly and continuously within California.  Additionally, Defendant sold the Affected Products to consumers in California, including Plaintiff Weiler.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Plaintiff Weiler's purchases of the Affected Products.

## **PARTIES**

### **Plaintiff**

20.     Plaintiff Rita Ade is a resident of the state of Maryland. Plaintiff Ade purchased the Affected Products during the Class Period. Prior to purchasing the Affected Products, Plaintiff Ade read the Affected Products' labels and purchased the Affected Products in reliance on Defendant's representation that the Affected Products contained only the ingredients listed on the Affected Products' labeling and were safe for consumption. Plaintiff Ade believed that the Affected Products that advertise as dark chocolate did not contain lead and cadmium. If Trader Joe's remedied the issues identified in this complaint, Plaintiff Ade would resume purchasing the Affected Products.

21.     Plaintiff Erin Weiler is a resident of the state of California. Plaintiff Weiler purchased the Affected Products during the Class Period. Prior to purchasing the Affected Products, Plaintiff Weiler read the Affected Products' labels and purchased the Affected Products in reliance on Defendant's representation that the Affected Products contained only the ingredients listed on the Affected Products' labeling and were safe for consumption. Plaintiff Weiler believed that the Affected Products that advertise as dark chocolate did not contain lead and cadmium. If Trader Joe's remedied the issues identified in this complaint, Plaintiff Weiler would resume purchasing the Affected Products.

**Defendant**

22.     Defendant Trader Joe's is incorporated in the state of California.  It is headquartered in Monrovia, California.  As part of its broader business, Defendant manufactures, advertises, labels, and sells dark chocolate, including the Affected Products, throughout the United States. Defendant created or authorized the creation and dissemination of the deceptive advertisements, packaging, and labeling associated with the Affected Products.

## FACTUAL ALLEGATIONS

23.     Consumers must and do rely on Defendant to truthfully and honestly report what their Affected Products contain on their packaging or labels.  Companies, including Trader Joe's as alleged herein, profit from consumers' search for safe and healthy products.  Consumers will, and do, pay premiums for safe and healthy products.

24.     While Defendant's marketing and labeling of the Affected Products is silent as to the levels of cadmium and lead present in the Affected Products, public reports and articles recently revealed that Defendant's Affected Products contain unsafe levels of lead and cadmium. The levels of lead and cadmium observed exceeded the MADLs for these chemicals; posing serious health risks.

25.     Lead and cadmium are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer and other serious problems (often irreversible) such as damage to brain development, the liver, kidneys, and bones.[14]

26.     California recognized that lead and cadmium as "known to the state to cause cancer or reproductive toxicity . . ." after the state's qualified experts formed the opinion that both lead[15]

---

[14] *Heavy metals in food crops: Health risks, fate, mechanisms, and management*, SCIENCEDIRECT, https://www.sciencedirect.com/science/article/pii/S0160412018327971 (last visited January 12, 2023).
[15] *Lead and Lead Compounds*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds (last visited January 12, 2023).

CLASS ACTION COMPLAINT

and cadmium[16] were "shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity."[17]

27.     The harmful effects of lead have been studied extensively, particularly its effect on children.  Studies have shown that even lower levels of lead exposure in children may result in reduced neurobehavioral functioning, with symptoms ranging from neuropsychological deficits that interfere with classroom performance, lower IQ, decreased verbal processing and attention span.[18]

28.     Lead can also cross the fetal barrier during pregnancy, exposing the developing fetus and mother to risks in the form of reduced growth and premature birth.[19]

29.     More generally, lead may cause anemia, weakness, and kidney and brain damage.[20] In fact, lead accumulates over time and may affect almost every organ and system in a person's body, leading to toxicity and serious health risks, including inhibited neurological function, anemia, seizures, and, at worst, coma and death.[21]

30.     Adults are also affected by lead toxicity, as the bones can store lead after initial exposure and re-expose the body by releasing the stored lead into the blood stream.[22]

31.     Because the negative effects of lead can be experienced below established limits, "[n]o amount of lead is known to be safe."[23]

32.     Cadmium, a heavy metal like lead, also poses severe safety concerns for consumers.

---

[16] Cadmium, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, https://oehha.ca.gov/proposition-65/chemicals/cadmium (last visited January 12, 2023).

[17] *See* Cal. Health & Safety Code § 25249.8(b).

[18] Theodore I. Lidsky and Jay S. Schneider, *Lead neurotoxicity in children: basic mechanisms and clinical correlates*, BRAIN, Vol. 126, Issue 1 (Jan. 2003) https://academic.oup.com/brain/article/126/1/5/299373#.Y79duQG8eOc.link (last visited January 12, 2023).

[19] See *Childhood Lead Poisoning Prevention: Pregnant Women*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *https://www.cdc.gov/nceh/lead/prevention/pregnant.htm* (last visited January 12, 2023).

[20] *The National Institute for Occupational Safety and Health (NIOSH): Lead*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/topics/lead/health.html (January 12, 2023).

[21] *Id.*

[22] See *Lead Exposure in Adults: A Guide for Health Care Providers,* STATE OF NEW YORK DEPARTMENT OF HEALTH, https://www.health.ny.gov/publications/2584.pdf (last visited January 12, 2023).

[23] Jessica Pupovac, *Lead Levels Below EPA Limits Can Still Impact Your Health,* NPR (Aug. 13, 2016), https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last visited Jan. 12, 2023).

---

CLASS ACTION COMPLAINT

33.     Like lead, cadmium may cause complications in pregnant women such as fetal growth restriction.[24]

34.     The World Health Organization classified cadmium as a Group 1 carcinogen in 2012,[25] and its exposure is known to cause a variety of cancers.[26]  The US Center for Disease Control concurs with the World Health Organization and similarly considers cadmium to be "a cancer-causing agent."[27]

35.     When eaten, large amounts of cadmium can severely irritate the stomach and cause vomiting and diarrhea.[28]  Even at low exposure levels, cadmium can build up in the kidneys and cause kidney disease and fragile bones.[29]

36.     Consumers lack the meaningful ability to test or independently discover whether a product contains unhealthy substances such as lead, cadmium, or other unsafe substances, especially at the point of sale. The testing necessary to discover many unhealthy substances, including cadmium and lead, requires expensive and destructive scientific testing. Given the relatively low price of the Affected Products, no reasonable consumer would engage in such testing before purchasing the Affected Products.

37.     Consumers must, instead, rely on Defendant to truthfully represent what its Affected Products contain on its packaging and labels.  Where Defendant was silent as to the presence of the Heavy Metals, consumers, including Plaintiff and Class Members, did rely on Defendant's representations that the Heavy Metals were not present in the Affected Products.

38.     However, public reports and articles recently revealed that Defendant's Affected Products contain unsafe levels of lead and cadmium. The levels of lead and cadmium observed

[24] Hui-Xia Geng et al, *Cadmium: Toxic Effects on Placental And Embryonic Development*, NIH: NATIONAL LIBRARY OF MEDICINE (Feb. 15, 2019) https://pubmed.ncbi.nlm.nih.gov/30797179/ (last visited Jan. 12, 2023)
[25] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER – WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited Jan. 12, 2023).
[26] *Cancer Trends Progress Report: Cadmium*, NATIONAL CANCER INSTITUTE – NIH, https://progressreport.cancer.gov/prevention/cadmium#:~:text=Cadmium%20and%20its%20compounds%20are,the%20breast%20and%20urinary%20bladder. (last visited Jan. 12, 2023).
[27] *National Biomonitoring Program: Cadmium Factsheet*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html (last visited January 12, 2023).
[28] *Id.*
[29] *Id.*

exceeded the MADLs for these chemicals; posing serious health risks. Despite these risks, Defendant failed to include any disclosures regarding lead and cadmium levels on its Affected Products.

39.    Defendant knew and could not have been unaware of the lead and cadmium in the Affected Products. In 2016, Trader Joe's (as well as other manufacturers and distributors) received notice that at least some of its dark chocolate products, including the Dark Chocolate Lover's Bar 85% Cacao, contained excessive cadmium and lead.[30] This notice came in the form of Proposition 65 Violation Notices which confirmed the presence of heavy metals in the Trader Joe's products, including one of the Affected Products.[31] In the intervening 6 years, Trader Joe's has not remedied the issue, failing to warn consumers that the Affected Products would expose consumers to cadmium and lead when eaten.

40.    Researchers have found that heavy metals were "typically found naturally in the outer shell of the cocoa bean, not in the bean itself."[32] The beans were measured soon after being picked and removed from pods, showing low levels of cadmium and lead, but, as the beans dried, the levels increased.[33] Consumer Reports and its researches concluded that "[d]uring that time, lead-filled dust and dirt accumulated on the beans."[34] Thus, on information and belief, Trader Joe's itself is responsible for lead being present in the Affected Products.

41.    Additionally, Defendant has a responsibility to implement controls to significantly minimize or prevent unnecessary consumer exposure to the Heavy Metals in the Affected Products. Trade Joe's itself represents that it "would never sell any product [it] believes to be unsafe."[35] According to Trader Joe's, "[w]e take these matters seriously – personally, even, as our

---

[30] *Are You Eating Toxic Chocolate? Lead Found in Trader Joe's, Hershey's and Other Chocolates*, ECOWATCH, https://www.ecowatch.com/are-you-eating-toxic-chocolate-lead-found-in-trader-joes-hersheys-and-1882199456.html (last visited Jan. 12, 2023).

[31] See Ellison Folk, *Notice of Violation of California Health and Safety Code § 25249.5 et seq.*, OFFICE OF THE ATTORNEY GENERAL – STATE OF CALIFORNIA DEPARTMENT OF JUSTICE (Oct.24, 2017) https://oag.ca.gov/system/files/prop65/notices/2017-02379.pdf (last visited January 12, 2023).

[32] Kevin Loria, *Lead And Cadmium Could Be In Your Dark Chocolate*, CONSUMER REPORTS (Dec. 15, 2022) https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (last visited Jan. 12, 2023).

[33] *Id.*

[34] *Id.*

[35] *Product FAQs*, TRADERJOES, https://www.traderjoes.com/home/FAQ/product-faqs (last visited Jan. 12, 2023).

families eat and drink TJ's products, too."[36]  Trader Joe's goes on to promise that it "does not sell any product containing chemicals in excess of the levels allowed by the FDA or any other law."[37]

42.  While Defendant goes into length about its testing processes for non-GMO foods, it remains quiet as to how it determines whether or not it complies with its own promise to sell foods at acceptable levels allow by "any other law."[38]  Accordingly, Defendant was in the best position to test the Affected products for lead and cadmium levels, represented that it complied with all relevant laws, and sold the Affected Products containing the Heavy Metals, whereas Plaintiff and the Class could not have known or easily discovered that the Affected Products posed a health hazard.

43.  Despite Defendant's knowledge of lead and cadmium in the Affected Products, Defendant failed to provide any warning on the place that every consumer looks when purchasing a product –the packaging or labels—that the Affected Products contain lead and cadmium.

44.  Consumers are concerned with what is in the food that they are putting into their bodies, and that concern is amplified when providing food for particularly susceptible consumers, such as pregnant women and children.

45.  In making their purchasing decisions, consumers, such as Plaintiff and the Class Members, are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the packaging of food they purchase. Defendant knew or should have known that if it had not omitted that the Affected Products contained unsafe levels of lead and cadmium and that the Affected Products were not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Affected Products (or purchased them at all).

46.  Plaintiff and the Class reasonably relied on the marketing, labeling, and information provided by Defendant in making purchasing decisions. By representing the Affected Products as containing only the ingredients listed on the Affected Products' labeling, and not disclosing the

---

[36] *Id.*
[37] *Id.*
[38] *See Id.*

CLASS ACTION COMPLAINT

presence of the Heavy Metals, Defendant misled reasonable consumers, including Plaintiff and the Class.

47.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

48.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for the Affected Products. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Affected Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Affected Products.

49.    Plaintiffs would not have purchased the Affected Products, or would have paid less for them, had the Affected Products been truthfully and accurately labeled.

## **CLASS ALLEGATIONS**

50.    Plaintiffs brings their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased one or more of the Affected Products in the United States within the applicable limitations period (the "Nationwide Class").

51.    Plaintiff Ade brings this class action individually and on behalf of the following Maryland subclass:

> All consumers who purchased one or more of the Affected Products in the state of Maryland within the applicable limitations period (the "Maryland Subclass").

52.    Plaintiff Weiler brings this class action individually and on behalf of the following California subclass:

> All consumers who purchased the Affected Products in the state of California within the applicable limitations period (the "California Subclass").

CLASS ACTION COMPLAINT

53.     Excluded from the Class is governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

54.     The Nationwide Class, Maryland Subclass, and California Subclass shall be referred to collectively throughout the Complaint as the Class.

55.     The Nationwide Class, Maryland Subclass, and California Subclass are properly brought and should be maintained as class actions under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

56.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the Maryland Subclass who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

57.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a.     Whether Defendant's marketing, advertising, packing, and labeling for the Affected Products was false, misleading, and/or deceptive;

      b.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased its Affected Products;

      c.     Whether the Affected Products contain lead and cadmium;

      d.     Whether Defendant breached the implied warranty of merchantability relating to the Affected Products;

      e.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Affected Products;

CLASS ACTION COMPLAINT

f.  Whether Defendant's false and misleading statement concerning its Affected Products were likely to deceive the public; and

g.  Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

58.  Typicality: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

59.  Adequacy: Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

60.  Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

61.  Superiority: A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

62.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF MARYLAND CONSUMER PROTECTION ACT
#### Md. Code Ann., Com. Law §§ 13-101 *et seq.*
#### (On Behalf of Plaintiff Ade and the Maryland Subclass Members)

63.     Plaintiff Ade repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

64.     Plaintiff Ade brings this claim individually and on behalf of the Maryland Subclass members.

65.     Plaintiff Ade and the Maryland Subclass purchased the Affected Products, making each of them a "consumer" pursuant to Md. Code Ann., Com. Law § 13-101(c)(1).

66.     Defendant is a business entity that manufactures, packages, and distributes, among other products, the Affected Products, qualifying it as a "Person"[39] and a "Merchant"[40] under Maryland law.

67.     Defendant's Affected Products are primarily meant to be enjoyed by consumers for personal, household, and family purposes, and thus qualify as "Consumer goods" under Maryland law.[41]

68.     Defendant's marketing and labeling of the Affected Products constitutes "Advertisement" under Md. Code Ann., Com. Law § 13-101(b).

69.     Maryland's Consumer Protection Act prohibits a person from engaging in "unfair or deceptive trade practices in a variety of circumstances, including the "sale . . . of consumer goods . . . or consumer services." Md. Code Ann., Com. Law § 13-303(1).

70.     The act generally prohibits "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with . . . the promotion or sale of any

---

[39] Md. Code Ann., Com. Law § 13-101(h).
[40] Md. Code Ann., Com. Law § 13-101(g).
[41] Md. Code Ann., Com. Law § 13-101(d)(2).

CLASS ACTION COMPLAINT

consumer goods . . .[,]"[42] regardless of whether a consumer has actually been misled or damages as a result of the practice.[43]

71.     Violations may involve affirmative "false . . . or misleading oral or written statements . . . or other representation[s] of any kind which ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers."  Md. Code Ann., Com. Law § 13-301(1).

72.     Violations also include "failure to state a material fact if the failure deceives or tends to deceive[.]"[44]

73.     Prohibited representations include representations that "[c]onsumer goods . . . have a . . . characteristic, ingredient, use, benefit, or quantity which they do not have,"[45] and representing that "[c]onsumer goods . . . are of a particular standard, quality, grade, style, or model which they are not."[46]

74.     Defendant intentionally, through its advertising, made representations and omitted information about the presence and level of cadmium and lead in its Affected Products, which had or could have had the capacity, tendency, or effect of deceiving or misleading consumers.

75.     Those representations and omissions included written statements and visual depictions, as to the characteristics, quantities, and/or the particular standards, grades, and/or safety of the Affected Products and their ingredients.

76.     In particular, Defendant failed to disclose the elevated levels of cadmium and lead or the presence of health hazards posed by the presence of cadmium and lead.

77.     Defendant knew or could not have been unaware of the presence of the cadmium and lead in its Affected Products as it manufactured, tested, and provided quality control for the Affected Products.

---

[42] Md. Code Ann., Com. Law § 13-301(9)(i).
[43] Md. Code Ann., Com. Law § 13-302.
[44] Md. Code Ann., Com. Law § 13-301(3).
[45] Md. Code Ann., Com. Law § 13-301(2)(i).
[46] Md. Code Ann., Com. Law § 13-301(2)(iv).

78.     Defendant failed to state material facts which had the tendency to deceive Plaintiff Ade and the Maryland Subclass, as to the characteristics, quantities, and the particular standards, grades, and safety of the Affected Products and their ingredients.

79.     Those statements, visual depictions, and failures to state material facts caused Plaintiff to suffer pecuniary harm.

80.     Those statements, visual depictions, and failures to state material facts constitute intentional and or willful violation(s) of Maryland's "Consumer Protection Act."

81.     Plaintiff Ade and the Maryland Subclass claim statutory and actual damages pursuant to Maryland Code Annotated, Commercial Law, Title 13, for these violations of the same.

82.     Plaintiff Ade and the Maryland Subclass further claim attorneys' fees for Defendant's violations of the same.


## COUNT II

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of Plaintiff Weiler and California Subclass Members)**

83.     Plaintiff Weiler repeats, re-alleges, and incorporates each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

84.     The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

85.     By violating state consumer protection statutes, Defendant has violated the UCL's "unlawful prong," as described herein.

86.     Defendant's failure to disclose the presence of the Heavy Metals in the Affected Products violates California's Consumers Legal Remedies Act[47] and False Advertising Law.[48]

87.     Defendant has also violated the fraudulent prong of the UCL by failing to disclose the presence of the Heavy Metals in the Affected Products, which was likely to deceive the public.

---

[47] Cal. Civ. Code §§ 1750 *et seq.*
[48] Cal. Bus. & Prof. Code §§ 17500 *et seq.*

88.     By marketing and packaging the Affected Products with no mention of the Heavy Metals, Defendant violates the unfair prong of the UCL because such conduct was: (i) immoral, unethical, unscrupulous, and oppressive; (ii) caused substantial to members of the California Subclass who Defendant's packaging and omissions; and (iii) violated established public policy against deceptive conduct by businesses.  Further, such misconduct allowed Defendant to have an unfair advantage over competitors who take pains to keep Heavy Metal exposure low or otherwise accurately report the levels of cadmium and lead within their products.  Trader Joe's justifications or reasons for, or the utility or benefit (if any) of Defendant's misconduct, were substantially outweighed by the substantial economic harm that such misconduct caused members of the California Subclass.  Finally, the harm caused by Facebook's misconduct is not one that members of the California Subclass could have reasonably avoided given Defendant's exclusive knowledge of and control over its testing practices, quality assurance programs, and marketing.

89.     As a result of Defendant's UCL violations, as described above, Plaintiff Weiler and other members of the California Subclass have suffered injury, including, but not limited to, paying for products they saw advertised as being Heavy Metal free that they would not have otherwise purchased had they known they were being sold consumable products which contain cadmium and lead.

90.     Plaintiff Weiler and the California Subclass members would have considered it important to their decisions to purchase the products to know that they were purchasing food products that would be exposing them to cadmium and lead.

91.     Because of Trader Joe's UCL violations described above, Plaintiff Weiler and the California Subclass suffered injury, and lost money, by paying for the Affected Products that they would not have purchased on the same terms, if at all, had they known the Affected Products contain the Heavy Metals.

92.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Weiler and the California Subclass are entitled to: a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; b) full restitution of all monies paid to Defendant as a result of its deceptive

---

17

CLASS ACTION COMPLAINT

practices; c) interest at the highest rate allowable by law; and d) an award of attorneys' fees and costs.

## COUNT III

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500 *et seq.*
### (On Behalf of Plaintiff Weiler and the California Subclass Members)

93.     Plaintiff Weiler repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

94.     California's False Advertising Law prohibits untrue or misleading statements or omissions in connection with the sale of goods.[49]

95.     Defendant's failure to adequately disclose the presence of lead and cadmium in the Affected Products, as set forth herein, is likely to deceive the public.

96.     Defendant knew, or should have known, that the Affected Products contained cadmium and lead and had a duty to disclose their presence to consumers.

97.     By failing to alert consumers to the presence of the Heavy Metals, Defendant misled consumers. Defendant knew, or should have known, that its omissions would result in misleading reasonable consumers.

98.     Defendant continues to omit the presence of the Heavy Metals from its representations and labeling concerning the Affected Products. Prospective injunctive relief is necessary to cure Defendant's conduct, especially as Plaintiff Weiler wishes to purchase the Affected products in the future, assuming Defendant can assure her that it will not contain the Heavy Metals in the future.

99.     Plaintiff Weiler and the California Subclass Members are entitled to injunctive and equitable relief, and restitution in the form of a full refund for the amount spent on the Affected Products.

---

[49] Cal. Bus. & Prof. Code § 17500

CLASS ACTION COMPLAINT

## COUNT IV

### VIOLATION OF CALIFORNIA CLRA
### Cal. Civ. Code §§ 1750 *et seq.*
### (On Behalf of Plaintiff Weiler and the California Subclass Members)

100.    Plaintiff repeats and re-alleges each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

101.    The Affected Products are "goods" as defined by Cal. Civ. Code § 1761(a).

102.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

103.    Plaintiff Weiler and the California Subclass qualify as "consumers" pursuant to California Civ. Code § 1761(d).

104.    Plaintiff Weiler's and the California Subclass's purchases of the Affected Products qualified as "transactions," as defined by Cal. Civ. Code § 1761(e).

105.    Defendant's conduct violated by the CLRA by: a) failing to mention the Heavy Metals on the Affected Products' packaging;[50] b) knowingly, recklessly, and/or intentionally representing that the Affected Products were of a particular standard, quality, or grade, when they were of another;[51] and c) knowingly, recklessly, and/or intentionally advertising the Affected Products with the intent not to sell them as advertised.[52]

106.    Defendant's omissions were material to reasonable consumers, including Plaintiff Weiler and California Subclass, as they would have determined the presence of Heavy Metals in their food as an important point of information when determining whether to purchase the Affected Products.

107.    Defendant had a duty to disclose the presence of lead and cadmium in the Affected Products because Defendant had exclusive knowledge as to the levels of Heavy Metals in the Affected Products, which was not reasonably accessible to Plaintiff Weiler and the California Subclass, and Defendant concealed the levels of cadmium and lead in the Affected Products from Plaintiff Weiler and the California Subclass.

---

[50] Cal. Civ. Code § 1770(a)(5).
[51] Cal. Civ. Code § 1770(a)(7).
[52] Cal. Civ. Code § 1770(a)(9).

108.    Plaintiff Weiler and California Subclass relied on Defendant's representations and packaging as to the quality and ingredients of the Affected Products.

109.    Plaintiff Weiler and the California Subclass were harmed, and will continue to be harmed, as a direct and proximate result of Defendant's violations unless Defendant is prevented from continuing to use misleading labeling and marketing as set forth herein in connection with advertising, distribution, and sale of the Affected Products via injunction. As such, Plaintiff Weiler and the California Subclass seek all injunctive relief deemed appropriate by the Court pursuant to Cal. Civ. Code § 1780(a)(5).

110.    Plaintiff Weiler and the California Subclass also seek an award of attorneys' fees pursuant to, *inter alia*, Cal. Civ. Code § 1780(e) and Cal. Civ. Code § 1021.5

## COUNT V

### BREACH OF IMPLIED WARRANTY
### (On Behalf of Plaintiffs and All Class Members)

111.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112.    Defendant manufactured, marketed, labeled, distributed, and sold the Affected Products, as part of its overall business. Defendant manufactured, marketed, labeled, distributed, and sold the Affected Products, as part of its overall business.

113.    The Affected Products are considered a "good" under the relevant laws.

114.    For goods to be merchantable under UCC section 2-314, it must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

115.    Defendant breached the implied warranty of merchantability. The Affected Products, meant to be ingested, should not contain lead and cadmium, certainly not in amounts that are unhealthy or dangerous for consumers.

116.    Defendant is on notice of its breach.  In addition to widespread media reports, upon information and belief and based on representations made by Trader Joe's, the Company is or should have been aware through its own product testing and records.

117.    The Affected Product contained lead and cadmium, in amounts that were dangerous and or healthy to be consumed.  Plaintiffs and each of the members of the Class were injured as a result. Defendant thereby breached the following state warranty laws:

a.    Code of Ala. § 7-2-314;

b.    Alaska Stat. § 45.02.314;

c.    A.R.S. § 47-2314;

d.    A.C.A. § 4-2-314;

e.    Cal. Comm. Code § 2314;

f.    Colo. Rev. Stat. § 4-2-314;

g.    Conn. Gen. Stat. § 42a-2-314;

h.    6 Del. C. § 2-314;

i.    D.C. Code § 28:2-314;

j.    Fla. Stat. § 672.314;

k.    O.C.G.A. § 11-2-314;

l.    H.R.S. § 490:2-314;

m.    Idaho Code § 28-2-314;

n.    810 I.L.C.S. 5/2-314;

o.    Ind. Code § 26-1-2-314;

p.    Iowa Code § 554.2314;

q.    K.S.A. § 84-2-314;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-314;

t.    Md. Commercial Law Code Ann. § 2-314;

u.    106 Mass. Gen. Laws Ann. § 2-314;

CLASS ACTION COMPLAINT

1    v.  M.C.L.S. § 440.2314;

2    w.  Minn. Stat. § 336.2-314;

3    x.  Miss. Code Ann. § 75-2-314;

4    y.  R.S. Mo. § 400.2-314;

5    z.  Mont. Code Anno. § 30-2-314;

6    aa.  Neb. Rev. Stat. § 2-314;

7    bb.  Nev. Rev. Stat. Ann. § 104.2314;

8    cc.  R.S.A. 382-A:2-314;

9    dd.  N.J. Stat. Ann. § 12A:2-314;

10    ee.  N.M. Stat. Ann. § 55-2-314;

11    ff.  N.Y. U.C.C. Law § 2-314;

12    gg.  N.C. Gen. Stat. § 25-2-314;

13    hh.  N.D. Cent. Code § 41-02-31;

14    ii.  II. O.R.C. Ann. § 1302.27;

15    jj.  12A Okl. St. § 2-314;

16    kk.  Or. Rev. Stat. § 72-3140;

17    ll.  13 Pa. Rev. Stat. § 72-3140;

18    mm.  R.I. Gen. Laws § 6A-2-314;

19    nn.  S.C. Code Ann. § 36-2-314;

20    oo.  S.D. Codified Laws, § 57A-2-314;

21    pp.  Tenn. Code Ann. § 47-2-314;

22    qq.  Tex. Bus. & Com. Code § 2.314;

23    rr.  Utah Code Ann. § 70A-2-314;

24    ss.  9A V.S.A. § 2-314;

25    tt.  Va. Code Ann. § 8.2-314;

26    uu.  Wash. Rev. Code Ann. § 6A.2-314;

27    vv.  W. Va. Code § 46-2-314;

28    ww.  Wis. Stat. § 402.314; and

xx.    Wyo. Stat. § 34.1-2-314.

118.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Affected Products.

## COUNT VI

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and All Class Members in the Alternative)

119.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

120.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide class against Defendant.

121.    Plaintiff and members of the Class conferred benefits on Defendant by purchasing the Affected Products.

122.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Affected Products.

123.    Retention of those moneys under these circumstances is unjust and inequitable because Defendant has engaged, and continues to engage, in a systematic campaign of representing that the Affected Products do not contain the Heavy Metals, concealing and omitting material facts regarding the true nature of the Affected Products.  These false representations and omissions caused injuries to Plaintiffs and members of the Class because they would not have purchased the Affected Products, if at all, if they knew that the Affected Products contained lead and cadmium.

124.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against the Defendant as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

(b) For an order declaring the Defendant's conduct violates the laws referenced herein;

(c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d) For damages in amounts to be determined by the Court and/or jury;

(e) An award of statutory damages or penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of monetary relief; and

(h) Such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 12, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ Adam M. Apton
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (212) 363-7171
Email: aapton@zlk.com

Mark S. Reich*
Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Attorneys for Plaintiff*

*\*pro hac vice* applications forthcoming

CLASS ACTION COMPLAINT